IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JENNIFER R. SCOTT            :

    Plaintiff                         :

    v                                  Civil Case No. L-09-3271

                                  :

MERCK & CO., INC.             :

    Defendant                      :

o0o
## MEMORANDUM

This is a breach of contract case. Plaintiff Jennifer Scott alleges that she was fired from Merck in retaliation for bringing to light certain business practices that violated company policies and FDA regulations. Scott claims that Merck's publication of an express non-retaliation policy contractually limited its ability to terminate her otherwise at-will employment. Merck maintains that the policy was merely aspirational and created no legally enforceable obligation, and it has moved for summary judgment on this basis. The issues have been fully briefed, and on November 9, 2010, the Court held a hearing on Merck's Motion. For the reasons stated herein, the Court will DENY Merck's Motion for Summary Judgment (Docket No. 25).

### I.    FACTUAL BACKGROUND

The full facts of this case are set out in the parties' briefs. Scott worked as a pharmaceutical sales representative for Merck from 1992 to January of 2008, promoting Merck's products to physicians across central Maryland. She asserts that during this time she was successful at her job, that she was repeatedly promoted, and that she received numerous awards for her performance. It is undisputed that when Scott began working at Merck, her employment

1

was on an at-will basis, and that either party could terminate the relationship at any time and for any reason.

In 2005, William Liberato was made Scott's direct supervisor. He allegedly instructed Scott to charge expenses to her credit card that had been incurred by another representative who did not have a credit card and could not obtain one because of a recent bankruptcy. Scott was reluctant because she had no personal knowledge that the expenses were for proper business purposes, but agreed, believing that the arrangement would be temporary. As the requests continued, Scott twice discussed her concerns with Liberato, and was allegedly told that if she did not continue allowing the charges, she would be demoted. Scott complained a third time, and brought a copy of the company policies she believed Liberato was violating. She claims that as a result, and despite her superior performance, Liberato gave her a mediocre performance review in April of 2006.

Over the next year, the relationship between Scott and Liberato continued to deteriorate. Scott raised concerns with Liberato relating to certain of his practices and directives she believed to be contrary to company policy and, in some cases, FDA regulations. Liberato grew increasingly critical of Scott's job performance, and wrote several reports and memoranda highlighting deficiencies and raising the prospect of "appropriate next steps" if expectations were not met. Def.'s Mot. Summ. J. Ex. 8, at 3.

In July 2007, Scott reported Liberato to Merck's Ombudsman's Office and to its Office of Ethics. She initially reported that Liberato had pressured her to charge another representative's lunches to her credit card, and that he was retaliating against her for protesting. Soon after, Liberato placed Scott on a "performance improvement plan." Merck contends, however, that Liberato was unaware of Scott's complaint to the Office of Ethics when he did so.

In the ensuing months, Scott reported other issues to the Office of Ethics as it conducted an investigation into Liberato's behavior. Meanwhile, Liberato updated Scott's performance improvement plan to reflect a lack of satisfactory improvement.

In late 2007, Liberato was transferred to a new position, in what Scott believes to be a result of the ethical violations she reported. Though it is disputed whether the two are related, Merck's Office of Ethics did eventually find that Liberato had acted improperly regarding Scott's credit card, and that his use of promotional messages was inconsistent with company policy.

Though he was no longer Scott's supervisor, Merck allowed Liberato to conduct Scott's 2007 performance evaluation. In January 2008, he met with Scott and terminated her employment.

## II. PROCEDURAL BACKGROUND

Scott filed the instant action in the Circuit Court for Baltimore City on October 7, 2009, and on December 9, 2009, Merck removed to this Court. After completion of discovery, and following an unsuccessful settlement conference, Merck filed the instant Motion for Summary Judgment on September 23, 2010.

## III. STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); see also

Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987). Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. See Greensboro Prof'l Fire Fighters Ass'n, Local 3157 v. City of Greensboro, 64 F.3d 962, 967 (4th Cir. 1995).

## IV. DISCUSSION

### a. Merck's Policies

Since Scott's claim is for breach of contract, the Court must begin by examining the documents that the parties claim contain the contract's terms.

Various Merck policies prohibit retaliation against employees who report their concerns. Merck's Code of Conduct, entitled, "Our Values and Standards," states, "We will not tolerate retaliation against any employee for raising a business practices issue in good faith. . . . The fact that an employee has raised concerns in good faith, or has provided information in an investigation, cannot be a basis for denial of benefits, termination, [or] demotion . . . ." Pl.'s Resp. Ex. 9, at 26. Another document, entitled "Merck's Ethical Operating Standards Handbook," contains almost identical language. See Pl.'s Resp. Ex. 19, at 16. Finally, Merck's "Corporate Policy 57: Retaliation" states,

> Retaliation and threats of retaliation against employees who raise concerns, or against individuals who appropriately bring important workplace and business issues to the attention of management, are serious violations of Merck's values and standards and will not be

> tolerated. . . . All directors, officers and employees are strictly
> prohibited from engaging in retaliation or retribution . . . which is
> directed against an individual on the basis of or in reaction to that
> individual making a good faith report to the Company . . . of
> suspected violations of law, regulation, policy or procedures, or
> *Our Values and Standards*.

Pl.'s Resp. Ex. 20, at 1.

Against this, Merck presents two documents that it claims nullify any expectation by either party that the above policies are intended to modify the terms of the employment relationship. First, the employment application that Scott signed at the commencement of her relationship with Merck stated that, "if [Merck] and I enter into an employment relationship, I understand that I have the right to terminate my employment at any time and for any reason and that Merck & Co., Inc., retains a similar right." Def.'s Mt. Summ. J. Ex. 1, at 4. Second, a document entitled "U.S. Managers' Policies," which also states that retaliation against employees who raise business practice issues will not be tolerated, contains the following disclaimer:

> Employment at Merck is at-will, which means that employees are
> not hired for a specific duration of time and that either Merck or
> the employee may sever the employment relationship at any time,
> for any reason, with or without notice. Furthermore, none of the
> Company's written or unwritten programs, policies or practices
> should be viewed as creating any promises or contractual rights to
> employment or to the benefits of employment.

Def.'s Mt. Summ. J. Ex. 3, at 1. Though Scott claims that this policy was inapplicable to her because she was not a manager, the policy itself states that it "applies to all U.S.-based employees of Merck & Co., Inc . . . who are not covered by a collective bargaining agreement." Id.

### b. The Employment Contract

Under Maryland law, at-will employment is an employment contract of indefinite duration, which can be legally terminated at the pleasure of either party at any time. Adler v.

American Standard Corp., 291 Md. 31, 35 (1981). In an at-will relationship, an employer may fire an employee "for any reason, even a reason that is arbitrary, capricious, or fundamentally unfair." Towson University v. Conte, 384 Md. 68, 82 (2004).

The rule is not without exceptions, but they are narrow ones. First, certain statutes aimed at combating discrimination or preserving workers' rights may limit an employer's discretion to terminate an employee, but protect against adverse employment action only on their specific terms. Second, an employee may not be terminated where that termination is in contravention of a clear public policy. Adler, 291 Md. at 43. The final exception, and the one potentially applicable here, is that an employment contract, though of indefinite duration, may be so modified by a personnel policy statement as to require an exception to the common law at-will doctrine and limit the employer's discretion to terminate an employee. See Staggs v. Blue Cross of Maryland, Inc., 61 Md. App. 381, 392 (Md. Ct. Spec. App. 1985). "[P]olicy directives regarding aspects of the employment relation become contractual obligations when, with knowledge of their existence, employees start or continue to work for the employer." Dahl v. Brunswick Corp., 277 Md. 471, 476 (1976).

The interpretation of a written contract is ordinarily a question of law for the court. Suburban Hosp., Inc. v. Dwiggins, 324 Md. 294, 306 (1991), and cases cited therein. Only when there is a bona fide ambiguity in the contract's language or legitimate doubt as to its application under the circumstances is the contract submitted to the trier of the fact for interpretation. Bd. of Educ. of Charles Cnty. v. Plymouth Rubber Co., 82 Md. App. 9, 26 (Md. Ct. Spec. App. 1990). The Court in this case finds no ambiguity in the language at issue, and it is therefore the Court that will interpret the contract and its terms. It is well established that Maryland follows the objective law of contracts. The Court must therefore "first determine from the language of the

6

agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated." General Motors Acceptance Corp. v. Daniels, 303 Md. 254, 262 (1985). Applying this test, Maryland courts have found that reasonable people in the position of the parties would have intended a contractual exception to the at-will employment relationship only in certain very limited circumstances.

Two major factors bear on this determination: the specificity of the provisions at issue and any disclaimer of contractual intent that would affect the reasonable basis for the employee's reliance on those provisions. First, the benefits promised must be definite and specific, capable of objective application in discrete cases. MacGill v. Blue Cross of Maryland, Inc., 77 Md. App. 613, 618–19 (Md. Ct. Spec. App. 1989). "[G]eneral statements of policy are no more than that and do not meet the contractual requirements for an offer." Id. (quoting Pine River State Bank v. Mettille, 333 N.W.2d 622, 626 (Minn. 1983)); see also Ayers v. ARA Health Services, 918 F. Supp. 143, 148 (D. Md. 1995) (statement of company policy to "behave in an ethical manner" too general to form basis for breach of contract claim); MacGill, 77 Md. App. 613 (commitment to fill vacancies with most qualified applicant consistent with law, fairness, and affirmative action did not promise any specific and definite benefit).

Second, an employer may state that benefits are not meant to be contractually enforceable. The Maryland Court of Special Appeals has held that justifiable reliance upon a policy statement is precluded where contractual intent has been expressly disclaimed, Castiglione v. Johns Hopkins Hosp., 69 Md. App. 325, 341 (1986), but has also warned that "not every disclaimer in an employer's employee manual, however, will effectively disclaim contractual liability." Elliott v. Board of Trustees of Montgomery County Community College, 104 Md. App. 93, 102 (Md. Ct. Spec. App. 1995). The ultimate issue is whether the employee could

7

justifiably have relied upon the handbook and the employer/employee relationship it reflected, as modifying his employment relationship. Haselrig v. Public Storage, Inc., 86 Md. App. 116, 126, 129 ("[C]onsidering the employee handbook as a whole, however clearly the purported disclaimers, viewed in isolation, may define the employer-employee relationship, they are ineffective in foreclosing justifiable reliance by appellant upon other provisions in the handbook.").

In this case, the Court finds that Scott's reliance on Merck's non-retaliation policies as part of her employment contract was reasonable. The promise that employees will be protected from retaliation for reporting business practice issues in good faith, and that such reporting may not be the basis for demotion, denial of benefits, or termination, is sufficiently specific and definite to constitute an enforceable promise under the Staggs framework. Though Merck's policy is in some sense aspirational, in that it states that retaliation is "unacceptable" and "will not be tolerated," it also promises an identifiable and unambiguous benefit: employees will not be fired as a result of good-faith whistle blowing.

Merck is correct that Maryland courts have found a Staggs exception in only four cases, and that none of these was based on a non-retaliation policy. This Court is satisfied, however, that Maryland courts would find a non-retaliation policy enforceable if it were sufficiently specific and concrete. The policy in this case is far closer to those specific promises found to be enforceable than to the general aspirational statements in other cases. The cases in which handbook provisions were found enforceable are Dwiggins, 324 Md. 294 (specific grievance procedure before termination); Haselrig, 86 Md. App. 116 ("you will be counseled by your Supervisor and given a reasonable opportunity to improve" before termination); Staggs, 61 Md. App. 381 (two counseling sessions prior to termination); and Dahl, 277 Md. 471 (two weeks'

severance). Comparison with a sampling of the cases in which contract formation was denied, such as Ayers, 918 F. Supp. 143 (policy to "behave in an ethical manner"); MacGill, 77 Md. App. at 619 (commitment to fill vacancies with most qualified applicant consistent with law, fairness, and affirmative action); and Conkwright v. Westinghouse Elec. Corp., 739 F. Supp. 1006 (D. Md. 1990) (fair treatment and equal employment opportunity) demonstrates that Merck's non-retaliation policy is much closer to the "definite and specific" end of the continuum. If a "reasonable opportunity to improve" is specific enough to be enforceable, then so is a promise not to terminate someone's employment on retaliatory grounds.[1]

Given the unambiguous nature of the non-retaliation policy, the disclaimers that Merck relies upon are insufficient to defeat Scott's reasonable expectation that Merck intended to limit its ability to terminate her for retaliatory reasons. Unlike other cases where courts have found disclaimers effective in defeating contract formation, this case involves an attempt by Merck to disavow, through use of broad disclaimers, a specific benefit that clearly implicates grounds for termination.

By contrast, in Castiglione v. Johns Hopkins Hosp., the Employee Handbook provision stating, "Your supervisor will review your job performance with you at least once every twelve (12) months," was unrelated to termination of employees and so "[did] not indicate any intent to limit the discretion of the [employer] to discharge only for cause, as was the case in Staggs." 69 Md. App. at 330 n. 1, 340–41. The court also found that the provisions relied on by the employee "when viewed in the larger context, were but 'general policy statements' not amounting to an offer of employment for a definite term or requiring cause for dismissal." Id. at

---

[1] Merck also correctly asserts that "[n]o Maryland court has found that a handbook or personnel policy not directly related to the termination of employment constituted a contract." Def.'s Mt. Summ. J. 40. Surely, however, the statement in the "Retaliation" section of Merck's Code of Conduct that "[t]he fact that an employee has raised concerns in good faith . . . cannot be a basis for . . . termination" fulfills this criterion.

9

340. Likewise, in Fournier v. U.S. Fidelity & Guar. Co., the court found that an employee could not justifiably rely on any indication in the employee manual that he would only be terminated after certain procedures were followed because an express disclaimer on the employment application made clear that employment could be terminated by either party at will upon two weeks' notice. 82 Md. App. 31, 42 (Md. Ct. Spec. App. 1990). The promise relied on by the employee, however, was merely that the company "intends to make every effort to avoid terminating an employee's service," and that except in cases involving dishonesty, misconduct or insubordination, dismissal would result only after unspecified "efforts to remedy the trouble have failed." Id. at 35.

In the instant case, the policies given to Scott placed a specific limitation on Merck's otherwise unfettered power to end the employment relationship. Merck's contention that notwithstanding its express promise not to demote or fire employees in retaliation for bringing to light questionable business practices, it can do precisely that, is unavailing. Moreover, policies like the one at issue here do not simply benefit the employee. As the court noted in Staggs, "While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly." 61 Md. App. 381, 389 (quoting Toussaint v. Blue Cross & Blue Shield of Mich., 408 Mich. 579, 613 (1980)).

Merck operates in a heavily regulated industry, where the consequences may be severe if unethical business practices are not discovered early on. Reasonable people in the parties' situation would be justified in determining that, notwithstanding Merck's recitations that

employment was at-will and that no "written or unwritten programs, policies or practices should be viewed as creating any promises or contractual rights," it had undertaken to limit the circumstances in which it would terminate its employees in exchange for assurances that they, in turn, would feel comfortable reporting potential violations of law or company policy.

The Court wishes to make clear that this ruling will not, as Merck contends, usher in a world where "for many employers with important aspirational policies seeking to prevent retaliation and discrimination, any time an employee claimed she was discriminated against or retaliated against, she would also have a breach of contract claim." Def.'s Reply 6. General or aspirational policies not susceptible of precise application in individual cases, such as a mere statement that "retaliation will not be tolerated," cannot constitute binding contractual terms.

Nor does this ruling grant courts the right to inquire into the business judgment of companies as they make personnel decisions. Maryland courts have declined to infer a requirement of good faith and fair dealing in employment contracts, see Dwiggins, 324 Md. at 310, and they have justifiably expressed concern over "acting as super personnel officers, overseeing and second guessing the company's decisions . . . ." MacGill, 77 Md. App. at 620. As the MacGill court noted, in cases where policy directives were found to be enforceable contract terms, "whether an employee was terminated in violation of the company's announced termination procedures could be determined by reference only to the circumstances applicable to the affected employee and without regard to that of other employees." Id. at 619.

The same is true here. As in cases where the question is whether an employee was terminated for cause, "the jury may not review whether the factual bases for termination actually occurred or whether they were proved by a preponderance of the evidence submitted for its review. Instead, the proper role of the jury is to review the *objective* motivation . . . ." Towson

11

Univ. v. Conte, 384 Md. 68, 85 (2004). Therefore, if it finds that Scott was terminated for any non-retaliatory reason, the jury may not inquire into the wisdom or fairness of that decision.

## V.     CONCLUSION

In sum, the Court finds that Merck's non-retaliation policy is sufficiently specific and definite to constitute an enforceable contract term. Scott's employment contract incorporated the guarantee that she would not be terminated in retaliation for raising a business practice issue in good faith. Furthermore, there is sufficient evidence from which a reasonable jury could conclude that Merck breached this part of the contract. Accordingly, Scott's claims survive summary judgment and the case will proceed to trial. The Court will, by separate Order of even date, DENY Merck's Motion for Summary Judgment (Docket No. 25).

Dated this 30th day of November, 2010.

/s/
_____
Benson Everett Legg
United States District Judge