IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JENNIFER R. SCOTT | : | |
| Plaintiff | : | |
| v | : | Civil Case No. L-09-3271 |
| MERCK & CO., INC. | : | |
| Defendant | : | |

o0o
**MEMORANDUM**

Now pending is the Motion of Defendant Merck & Company, Inc. ("Merck") for Judgment as a Matter of Law. Docket No. 87. The Motion has been comprehensively briefed, and no hearing is deemed necessary. See Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the Court will, by separate Order of even date, DENY the Motion.

I.       BACKGROUND

The Plaintiff in this case, Jennifer Scott, brought suit against Merck for terminating her in alleged breach of her employment contract. At summary judgment, the Court ruled that Merck's Employee Handbook formed the basis of a contract that modified the terms of Scott's employment, which was otherwise at-will, and prevented Merck from terminating her in retaliation for raising business practices issues in good faith. The case then proceeded to a jury trial to decide whether Scott had indeed raised business practice issues in good faith and whether such activity had been the cause of her termination. Scott sought consequential damages in an amount equal to back pay from the date of termination to the date of trial and front pay for so long as the jury found she would continue to be unemployed.

1

During Merck's defense case, Merck's counsel, Mr. Baldwin, elicited testimony from William Liberato, Scott's former supervisor, that in January of 2010 Merck merged with Schering Plough. Merck's then called Lionel Randall, a former Merck sales representative. Randall and Scott were both part of the sales team that reported directly to Liberato. Randall testified that, as a result of a reorganization immediately following the Schering Plough merger, all members of Liberato's former team lost their jobs.

> **Question by Mr. Baldwin**: Which of the sales reps who had been in Mr. Liberato's district were laid off?
>
> **Mr. Randall**: Every one.

Trial Tr. vol. 3, 218, Jan. 13, 2011.

This testimony was important to the issue of damages. If Scott's position was eliminated in January 2010, she could not recover lost wages after that date. Despite the testimony's importance, it came as a surprise to the Court and to Scott's counsel. Merck had never revealed this significant piece of evidence during the long history of the case. The termination of Liberato's sales team had not arisen during discovery. Even though Merck had moved to limit Scott's damages prior to trial, Merck did not mention the layoff or advocate January 2010 as a cutoff date. The testimony was not unfair, however. Scott did not object to the testimony and Scott's attorney conceded that his discovery requests were not calculated to elicit the information.

Scott then testified during her rebuttal case that, notwithstanding the previous day's testimony from Randall, two of her former co-workers were still employed with Merck.

> **Question by Mr. Freeman**: There was some other discussion yesterday about what happened to the salespeople who continued to work for Mr. Liberato. Of the Executive Professional Sales Representatives, your title, who used to work for Mr. Liberato, do you know of any who are still working for Merck?

>**Ms. Scott**: I do. At least, at least two.
>
>**Question by Mr. Freeman**: Who was that?
>
>**Ms. Scott**: That would be Miss Kim Thomas and Miss Mary [Steneman].

Trial Tr. vol. 4, 12, Jan. 14, 2011.

In closing, Scott's counsel, Mr. Freeman, argued that because Scott knew of at least two other executive sales reps who were still working for Merck, the jury could reasonably conclude that, but for her allegedly retaliatory termination, she would still be employed as well.

Mr. Baldwin, in his closing, likewise turned his attention to damages in the event that the jury should return a verdict against Merck. He argued that the evidence showed that Scott would have "lost her job anyway in January of 2010," but he did not specifically address Scott's testimony regarding Thomas and Steneman. Id. at 117.

The jury deliberated and returned special verdicts, finding in Scott's favor and awarding her $513,000 in back pay and $42,000 in front pay. By awarding full back pay and front pay, the Jury must have decided that Scott would have survived the layoff following the Schering Plough merger.[1]

At trial, the Court denied Merck's Motion for Judgment as a Matter of Law at the close of the evidence, without argument, and submitted the case to the jury subject to a later ruling on the questions raised by the Motion. See Fed. R. Civ. P. 50(b). Merck's arguments were thereby properly preserved. Following the entry of judgment, Merck timely filed the renewed motion

---

[1] With regard to back pay, the jury was instructed that damages should be calculated from the date of the breach to the date it returned a verdict, unless it found that Scott would have been terminated for non-retaliatory reasons prior to trial. The jury's award represents almost the full measure of back pay damages requested by Scott.

The jury was further instructed that it should award front pay only if it found that the damages resulting from breach of the employment contract would continue past the date of trial, and that it should not award damages that would be unduly speculative. The jury's front pay award represents approximately four months of Scott's final salary.

3

now before the Court, seeking judgment as a matter of law pursuant to Rule 50 or, in the alternative, a new trial or amended judgment under Rule 59. As a preliminary matter, Merck challenges nearly all of the Court's pretrial rulings. Next, it requests judgment in its favor on the grounds that the evidence presented at trial was legally insufficient for a finding of liability. Finally, it prays that, should the Court sustain the jury's finding of liability, Scott's damages be reduced to $178,000, a sum that comprehends approximately two years of back pay.[2]

In support of its request for remittitur, Merck has submitted succinct declarations from Thomas and Steneman to supplement the evidence presented at trial. Both aver that they were discharged from their positions as sales representatives, and secured their current jobs only after reapplication and rehiring from the general applicant pool. Merck has supplied no additional information beyond these declarations.

## II. LEGAL STANDARD

Judgment as a matter of law is appropriate where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a).

Under Rule 59(a), the Court may grant a motion for a new trial, or order a new trial <u>nisi remittitur</u>. Remittitur is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award. <u>Atlas Food Systems and Services, Inc. v. Crane Nat. Vendors, Inc.</u>, 99 F.3d 587, 593 (4th Cir. 1996). It is the court's duty to require a remittitur or order a new trial if it finds that a jury award is excessive. <u>Id.</u> (citing <u>Linn v. United Plant Guard Workers, Local 114</u>, 383 U.S. 53, 65–66 (1966)).

---

[2] Merck presents no explanation as to how it reached this figure.

The Maryland and federal standards for reviewing the alleged excessiveness of a jury's damage award differ.  See Snyder v. Phelps, 533 F. Supp. 2d 567, 585 (D. Md. 2008) (comparing Maryland and federal standards).  Under the doctrine of Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the Court must apply the Maryland standard.[3]  See Gasperini v. Center of Humanities, Inc., 518 U.S. 415, 430 (1996) (holding that the Erie doctrine "precludes a recovery in federal court significantly larger than the recovery that would have been tolerated in state court").

Under Maryland law, a damage award should be reduced if "the verdict is 'grossly excessive,' or 'shocks the conscience of the court,' or is 'inordinate' or 'outrageously excessive,' or even simply 'excessive.' "  Banegura v. Taylor, 312 Md. 609, 623 (1988) (citing Dagnello v. Long Island Railroad Co., 289 F.2d 797, 802 (2d Cir. 1961); Conklin v. Schillinger, 255 Md. 50 (1969)).  The trial court "should extend the fullest consideration possible to the amount returned by the jury" before it concludes that the verdict is excessive.  Conklin, 255 Md. at 69.

## III. DISCUSSION

With one exception, the grounds raised by Merck reiterate arguments already considered and rejected by the Court.  Having carefully examined the legal and factual contentions marshaled by Merck, the Court remains convinced that its earlier rulings were correct.  Accordingly, these grounds do not warrant disturbing the jury's verdict.  Moreover, the evidence presented at trial was sufficient to support the jury's determination that Merck, by retaliating against Scott, breached the employment contract between the parties.

---

[3] Under the federal standard, a damages verdict must be set aside if "the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice."  Johnson v. Parrish, 827 F.2d 988, 991 (4th Cir. 1987) (quoting Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir. 1941)).

Merck's Motion does raise a new issue, however, on the question of damages. The Court will, therefore, consider whether remittitur is proper in light of the evidence presented at trial and in Merck's post-trial submissions.

Merck advances several arguments in support of its position. It claims that it was surprised by Scott's trial testimony regarding the continued employment of Thomas and Steneman, and that it was not prepared to respond with the explanation it now proffers.[4] According to Merck, it is undisputed that Scott would have lost her job as a result of the merger, and it urges that as a matter of law Scott cannot recover damages for any period beyond the elimination of her position.[5] Furthermore, Merck maintains that Scott's testimony improperly implied that some members of Liberato's sales team had not lost their jobs, and it urges that the jury deliberated under this mistaken impression. If the Court declines to remit damages, Merck thus requests a new trial to explain that Thomas and Steneman had indeed been laid off but secured other posts. In this vein, Merck asserts that it would be sheer speculation to posit that Scott, too, would have successfully applied for another position within Merck.

Scott responds that the jury was entitled to conclude, at the very least, that Merck had not presented a complete picture with regard to effects of the merger. As Scott points out, the import of Randall's testimony (that Liberato's entire team had been laid off) is that the team members are no longer employed at Merck. Scott testified that to her knowledge, two of her former teammates were still working at Merck. Thus, Scott's testimony was fair rebuttal. The jury rejected Randall's testimony, meaning that they disbelieved Randall or concluded that Merck found a way to keep favored employees.

---

[4] Merck also argues that the jury should not have been permitted to consider this testimony at all, because Scott had no personal basis of knowledge. Merck failed to make this objection at trial, however, and has thereby waived it.

[5] This would, of course, negate any front pay award in addition to reducing the amount of back pay.

6

Finally, Scott argues that the declarations of Thomas and Steneman are not properly before the Court, because they do not constitute "new" evidence. Under Rule 59, the Court may only grant a new trial based upon newly discovered evidence where a party can demonstrate that "(1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended." Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989). Scott argues that because Merck has always known whom it employs, and under what circumstances, it was required to present this evidence at trial or not at all.

The Court agrees with Scott. The declarations do not supply new evidence that was unavailable to Merck at the time of trial. Information concerning the merger and the fate of Scott's former team members has always been available to Merck.

Merck claims that it "could not have anticipated that it would have to proffer evidence at trial to counter Plaintiff's unfounded assertion" that two of her former team members were still employed by Merck. Def.'s Reply 15, Docket No. 93. This argument must be rejected. First, Scott's testimony was correct. Two of her former team members are still employed by the company. Second, information about the merger and layoffs is uniquely within Merck's, rather than Scott's, possession. If anyone was surprised at trial, it was Scott and her counsel.

Third, Merck could have anticipated that this fact might emerge at trial. As mentioned, merger and layoff did not crop up either during discovery or in Merck's pre-trial motions. Apparently, Merck chose to hold its cards close to the vest so that it could play the layoff trump card during its defense case. Merck was entitled to make this strategic choice. Pursuing this

strategy, however, meant that the facts concerning the layoff were not developed during discovery. Merck might have foreseen that Scott would know, through the industry grapevine, that some of her former teammates were still employed at the company. It could have been prepared at trial to counter this eventuality with testimony that these teammates were let go, then rehired into other positions.

Having missed the opportunity to complete the record at trial, Merck cannot do so in a post-trial motion. It believes it is entitled to a new trial because the jury was confused as to the true facts concerning the layoff. It is far from clear that the jury was, in fact, confused. If it was, however, any blame in this regard must rest with Merck. Merck chose to give the jury very little information; Randall testified only that the sales team was laid off. As mentioned, the implication of this testimony is that none of the members of the sales team are still working for Merck. Because Merck declined to develop and present the clarifying facts, it must suffer the consequences of any jury confusion.

I. **CONCLUSION**

For the reasons stated herein, Merck is not entitled to judgment as a matter of law. Nor, in light of the evidence, does the Court consider the jury's damages award to be excessive. The Court will, by separate Order of even date, DENY Merck's Motion for Judgment as a Matter of Law (Docket No. 87).

Dated this 27th day of April, 2011.

/s/
_____
Benson Everett Legg
United States District Judge